UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                    Chapter 11
Soo Hotels, Inc.                          Case No. 21-45708-mlo

                                          Hon. Maria L. Oxholm

                Debtor.
_____/

## MOTION TO APPROVE SALE OF PROPERTY OF THE ESTATE AND TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OUTSIDE OF THE ORDINARY COURSE OF BUSINESS UNDER 11 U.S.C. §363 FREE AND CLEAR OF LIENS, CLAIMS INTERESTS AND ENCUMBRANCES WITH LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO TRANSFER TO SALE PROCEEDS AND FOR RELATED RELIEF

Kimberly Ross Clayson, Subchapter V Trustee and trustee-in-possession in the above-captioned Chapter 11, Subchapter V case (the "Trustee"), moves this Court for an order approving the sale to Dominic Shammami or a higher bidder ("Buyer") of all of the property of the Debtor's estate—namely, the Debtor's equipment, inventory, and other personal property set forth in the proposed asset purchase agreement attached to this motion (the "Business Property")—outside the ordinary course of the Debtor's business, in accordance with section 363(b)(1) and (f) of Title 11 of the United States Code (the "Bankruptcy Code"), subject to competing bids, and established bidding procedures and guidelines. In support of this Motion, the Trustee states as follows:

# I. INTRODUCTION

1.    Debtor's assets should be sold in a chapter 11 section 363 sale by which all non-insider creditors will receive a 100% payout. Pursuant to the attached purchase agreement by Shareholder Dominic Shammami, Dominic Shammami proposes to pay the non-insider unsecured creditors 100% or assume their debts, pay all of the administrative expenses, to pay money to the other shareholder, Salwan Atto and to disclaim any distribution to himself to resolve potential claims that the estate may have against him.

2.    One of the purposes of chapter 11 is to get creditors paid and to maximize the value of the Debtor's assets for the benefit of creditors and all parties in interest. See e.g. <u>Stephens Industries, Inc. v. McClung</u>, 789 F.2d 386, 389 (6th Cir. 1986); <u>In re Naron & Wagner, Chartered</u>, 88 BR 85, 90 (Bankr D Md, 1988) ("Finally, Debtor has proffered that the proceeds from the proposed sale, when combined with other assets being liquidated, will be sufficient to pay non-insider creditors in full, so that only insider creditors are likely to be at risk of being adversely affected if the price was insufficient.").

3.    In the matter before this court, the Debtor's shareholders are not in a position to direct the operations of the company themselves without further litigation, the hotel may end up going dark if a sale does not occur in the Bankruptcy Court, and the going concern value of the hotel would be lost in such a situation. The purchase agreement with Dominic Shammami will allow for a 100% payout to

non-insider creditors or assumption of their liabilities, subject to allowing parties in interest to object to claims. This is a sufficient business purpose to authorize a sale of the Debtor's assets, under Stephens and relevant case law.

4. The proposed purchase by Dominic Shammami is viable because only property of the bankruptcy estate would be sold and there is a signed lease between Debtor and the owner of the real estate, St. Marie Hospitality. Shareholder Salwan Atto emailed to Dominic Shammami the lease in 2017, that Salwan Atto had signed, that was further executed by Dominic Shammami and Dia Shammami. Rent has been paid from Debtor for the benefit of the owner of the real estate, St. Marie Hospitality, since the inception of Debtor by Debtor making the payments to the mortgage holder on the real estate.

## II.    PROCEDURAL BACKGROUND

5. On July 7, 2021 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for reorganization relief under Chapter 11, Subchapter V of the United States Bankruptcy Code, 11 U.S.C. §101-1330 (as amended, the "Bankruptcy Code").

6. On July 9, 2021 the Trustee was appointed as Subchapter V Trustee and on August 5, 2021 the Trustee was appointed as Trustee in Possession and has been operating the Debtor's business.

7. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §157 and 1334. Venue is proper pursuant to 28 U.S.C. §1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The statutory basis for the relief requested lies in 11 U.S.C. § 363.

8. The Trustee intends this Motion to facilitate such a sale on terms commercially reasonable to the estate and its creditors. Because the proposed sale to Buyer is subject to higher and better offers the Trustee respectfully requests that the Court adopt certain bidding guidelines (the **"Guidelines"**) that will ensure that the Business Property is sold on commercially reasonable terms and that the value of the Business Property is maximized for the benefit of all creditors. *Concurrent with the filing of this Motion, the Trustee will file a motion for approval of the Guidelines*.

## III. DEBTOR'S PREPETITION GOVERNANCE AND MANAGEMENT

9. The Debtor is an incorporated entity that is owned equally by two shareholders, Dominic Shammami ("Shammami") and Salwan Atto ("Atto"). The Debtor was formed in 2017 to operate a franchise hotel under the Comfort Inn franchise flag.

10. Shammami has been and is responsible for the day-to-day management of the hotel and up to the date the Trustee was appointed as Trustee in possession, Shammami at all times since founding, was responsible for all management and governance duties of the Debtor.

11.    Atto has not had a direct role in management of the Debtor and holds a separate full-time job outside of the hospitality industry.

12.    The Debtor has never and does not presently operate under corporate bylaws and prior to the Petition Date, there was no management agreement in place designating the terms for Shammami's management of the hotel nor the amount of compensation he is entitled to receive for his management duties.

13.    Tax returns have not been filed for the Debtor since 2018. The Trustee has completed tax returns for 2019, 2020 and 2021, the tax returns are not yet filed due to the need for the shareholders to reach terms on the classification of disbursements to Shammami for each of those tax years. The shareholders have received copies of the tax returns and the Trustee is awaiting shareholder agreement as to the allocations but the Trustee reserves the right to make the final designation of treatment of disbursements. Dominic Shammami does not object to the filing of the completed tax returns.

14.    Since the Petition Date, the Trustee negotiated with the shareholders and obtained court approval to make periodic disbursements of no more than $7,000 a month each to Atto and Shammami and $1,500 to Shammami for his management duties. To date, Atto and Shammami have received $42,000.00 and $51,000.00 respectively which equates to payments for each month since the Petition Date except for the month of January 2022.

## IV.   THE SHAREHOLDER DISPUTE

15.    For at least two years and possibly since founding, both Shammami and Atto have been at odds with each other about the governance and management of the hotel. The dispute is likely in part due to the fact that the shareholders never adopted corporate bylaws leaving many of the governance, management        and compensation terms undecided and in dispute.

16.    The lack of terms for governance has led to questions about transparency and the extent to which Atto has been and is entitled to access to financial information of the Debtor and resulted in protracted litigation over these very issues.

17.    Just prior to the Petition Date, Shammami authorized the Debtor to file this bankruptcy matter to prevent appointment of a receiver.

18.    Early in this bankruptcy matter Atto filed a motion to dismiss this bankruptcy case.

19.    The United States Trustee and the Subchapter V trustee both intervened to try to resolve the dispute between the parties. In recognition of the dispute between the parties and the governance issues that resulted from mistrust between the parties in addition to having no corporate bylaws, the United States Trustee took the position that the Subchapter V Trustee should be appointed as a Trustee in Possession until dismissal, confirmation or other outcome of this bankruptcy matter.

20.     The Subchapter V Trustee and the United States Trustee have both indicated to the Debtor that each interested party's support for plan confirmation is conditioned on securing terms for Shammami's management of the hotel, adoption of bylaws and resolution of other terms including but not limited to final agreement on payment of management fees and shareholder distributions.

21.     Both the shareholders agreed to the compromise and allowed the case to proceed in bankruptcy with a trustee in possession to manage the finances of the business and to conduct an investigation of the financial affairs of the Debtor.

22.     The dispute between and among the Debtor's shareholders in part has to do with the question of compensation of Dominic Shammami who has received a total of payments of over $700,000 over the course of the last 4 years. According to Shammami's testimony, all the fees are for management of the hotel. At issue for Atto is the fact that he has not received any shareholder disbursements over the same period of time. Pursuant to the purchase agreement, Dominic Shammami would disclaim any entitlement to a distribution if he is the successful bidder in satisfaction of the estate's potential claims against him which involve whether he was overcompensated prepetition.

## V. THE DEBTOR'S BUSINESS OPERATIONS AND FINANCIAL CONDITION

23.     The hotel operates in Sault Ste Marie, Michigan and employs over 12 full and part time employees including a full-time general manager and non-insider,

Ryan Kabke, who assists in the handling of the day-to-day management of hotel employees, facilities, hospitality services and guest experiences.

24.     Prepetition Shareholder Dominic Shammami had direct oversight of hotel operations and management including decision making as to       nightly hotel rates, advertising, booking strategies and operations expenses.

25.     In order to qualify as an operator of the hotel, Shammami undertook the required hospitality training and educational requirements administered by Choice Hotels. He has likewise been in the business of hotel and hospitality management for more than 10 years.

26.     Since Covid-19 the hotel has experienced continued financial growth with an increased demand in local and road travel tourism as well as a continued demand from long haul truck drivers as well as smaller conference and event driven business.

27.     Were it not for the dispute between the shareholders, the hotel would have very little financial trouble.

28.     The shareholder dispute has at times prior to the bankruptcy petition affected hotel management, affecting the hotel's general manager's ability to operate the hotel with minimal disruption or differing direction from the shareholders who have not in practice agreed to a chain of command to allow the general manager direction from a single leader of the hotel operation.

## VI.    THE LEASE AGREEMENT

29.    The Debtor does not own the real estate where the hotel operates. The real estate is presently owned by a separate entity St. Marie Hospitality, Inc. (the "Landlord") which is owned equally by the father of Dominic Shammami, Dia Shammami, and the brother of Salwan Atto, Ihsan  Atto (the "Landlord Shareholders").

30.    The Landlord Shareholders were the prior owner of the hotel operation at the same location.

31.    The Debtor operates under a written lease whose authenticity has been called into question by Atto. Nonetheless, the Debtor has presented evidence by way of an email originating from Atto indicating       consent to the lease and Atto's authenticating his assent by signing of the lease.

32.    As a matter of ordinary course business, the Debtor has generally paid all mortgage expenses, taxes and other related costs of ownership of the real estate which ranges in cost between $13,000 to $27,000 monthly.

33.    Given the Debtor's governance issues and the protracted dispute between its shareholders and the Debtor's continuing obligations to its creditors and its estate, the fact that the Debtor operates on real estate it does not own and that is subject to ownership by Saint Marie Hospitality, Inc. whose shareholders are the

relatives of the shareholders of the Debtor, the sale of the Debtor's Business Property to Buyer is      within the Trustee's reasonable business judgment.

34.     The Trustee has had several settlement meetings with counsel for each of the Shareholders in an effort to bring the parties together into an effective management plan and an effective resolution to disputes over the history of the financial transactions between the Debtor and Shammami.

35.     The parties have come close to reaching terms on several occasions but continue to face personality conflicts that have impeded the ability of the Trustee to achieve a meeting of the minds between the shareholders.

36.     The Trustee has also held regular meetings with the shareholders to report on      the financial picture of the hotel on a bi-weekly basis and has worked to establish a norm of financial disclosure and transparency between the shareholders in an effort to change the dynamics of the business. These meetings have on the whole been successful but did not achieve any progress toward formalizing management terms between the shareholders.

37.     The Trustee made significant efforts prior to the filing of this motion to achieve a full sale of the hotel operation and the real estate in order to pay creditors in full and to make a meaningful distribution to the equity owners of the Debtor. Personality conflicts and distrust among the parties again hindered the ability to

bring the parties to an agreement on the terms of a sale that would fully resolve all disputes between the Debtor's shareholders and the Landlord's shareholders.

38. During negotiations which involved one interested outside buyer presented by the Attos, the Trustee marketed the sale of the hotel and provided some information about the financial picture of the Debtor to draw other outside interest via Crains Detroit Business both in digital banner advertisements and classified ads for the month of February which generated no other outside interest.

39. The present sale proposed by this motion provides a means to sell all property of the Debtor before this Court but not any assets owned by third parties such as     the real estate currently owned by the present Landlord.

40. The key terms of the sale are as follows:

    a. Subject to higher offers, Shammami will pay $300,000.00 in cash, plus $242,627.34 sufficient to allow payment in full of all non-insider allowed general unsecured creditors in full at closing and will assume the obligations of the Choice Hotels franchise agreement valued at its claim of $341,332.31 claim of Choice Hotels for a total purchase price of  $883,959.65;

    b. Of the $542,627.34, $242,627.34 shall be disbursed to all allowed non-insider general unsecured claims which shall be paid at closing and may be paid from the Purchased Assets less amounts retained

by the Trustee to allow for payment of court approved administrative expense claims; The estimated amount of all claims of the Debtor but subject to claims objections total $242,627.34 and are as follows:

i. $14,779.69 owed to the Internal Revenue Service
ii. $153,467.46 owed to the U.S. Small Business Administration
iii. $29,900.00 owed to Namou Hospitality
iv. $9,000.00 owed to City of Sault Ste. Marie
v. $561.08 owed to American Hotel Register
vi. $8,497.25 owed to Cloverland Coop
vii. $1,940.35 owed to CSI Group International
viii. $2,251.00 owed to ECOLAB
ix. $981.60 owed to Golden Malted
x. $674.33 owed to Great Lake Services
xi. $1,049.22 owed to Greentech
xii. $4,166.56 owed to Guest Supply
xiii. $400.00 owed to Matheny Lawn Service
xiv. $2,100.00 owed to Spectrum Enterprise
xv. $381.07 owed to Ultra Chem Inc.
xvi. $552.13 owed to Waste Management
xvii. $856.95 owed to Unemployment Insurance Agency for period ending June 2021
xviii. $11,068.65 owed to Michigan Sales, Use and Withholding for the period ending June 2021.

c. The $300,000 in cash will be disbursed to Atto for his equity interest in the Debtor subject to Atto's surrender of his stock and releasing all claims that he or any related persons have, whether known or unknown;

d. The Debtor's cash on hand which is currently held by the Trustee in Possession will be applied first to pay administrative expense claims

of the Debtor which include the fees of the Debtor's counsel, Subchapter V Trustee together with the financial advisor and accountant. Subject to court approval, the current administrative expenses are estimated at $100,000;

e. To the extent that the Trustee does not have sufficient cash on hand to pay all allowed non-insider unsecured claims after administrative expenses, the Buyer will bring additional at closing sufficient to pay all allowed claims in full. In order to determine the universe of allowed non-insider unsecured claims, all parties in interest will be required to bring all objections to claims within 21 days of the filing of this sale motion. The Trustee will retain cash sufficient to satisfy claims subject to objections until all claims objections, if any, have been fully adjudicated. The Trustee will disburse to Buyer any excess cash resulting from any denial of claims or if claims are adjudicated as allowed, the Trustee will disburse payment to allowed claims.

f. The purchase price is subject to an auction and higher bids at said auction under the same purchase agreement terms as those attached as Exhibit Af to this Motion;

g. Higher bids will be calculated after the stalking horse bid of

h. To qualify for the bidding process, bidders must either show proof of funds to close on a sale at least in the amount of $552,627.34 so long as the present an unconditional letter of approval from Choice Hotels to assume the $341,332.31 claim of Choice Hotels; if they do not have such a letter of approval, the bidder must show proof of funds to close on a sale at $893,959.65.

i. As more fully set out in the Trustee's motion for approval of bidding procedures, all bidders are subject to meeting bid qualifications which include proof of funds or loan commitment, bidders will be required to bid in minimum increments of $10,000.00;

j. Should Atto become the prevailing bidder then Shammami will be entitled to receipt of the net $300,000.00 in cash plus the overbid amount after successful closing on the sale of Debtor's assets to Atto, and Atto shall not receive any distribution.

k. Should Shammami become the prevailing bidder as a result of a competitive bidding process, Atto will be entitled to receipt of the net $300,000.00 in cash plus the overbid amount after successful closing on the sale of Debtor's assets to Shammami and Shammami shall not receive any distribution.

l.  Should a third party become the prevailing bidder as a result of a competitive bidding process, Atto and Shammami will be entitled to each receive half of the net sale proceeds less amounts to be disbursed to allowed non-insider general unsecured creditors after successful closing on the sale of Debtor's assets to a third party.

## VII.   AUTHORITY TO SELL PROPERTY OF THE ESTATE

41.   Bankruptcy Code section 363(b)(1) provides that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." The decision to enter into an agreement out of the ordinary course of a debtor's business is to be based on the reasonable business judgment of the Trustee. Courts generally approve nonordinary course sales under § 363(b)(1) where two standards are met: (1) business justification; and (2) the sale occurred in good faith. *In re Met-L-Wood Corp.*, (7th Cir. 1988) *cert. denied*, 490 U.S. 1006 (1989); *In re Lionel*, 722 F.2d 1063 (2d Cir. 1983); *In re Continental Airlines*, 780 F.2d 1223 (5th Cir. 1986)*In re Shary*, 152 BR 724, 725 (Bankr ND Ohio, 1993). The court should approve a use, sale, or lease of property under Bankruptcy Code section 363(b) if the debtor has established some articulated business justification for the proposed transaction. *In re Walter,* 83 B.R. 14, 16 (9th Cir. BAP 1988).

42.     The business justification for such a sale is that based on the unresolved and protracted dispute and personality conflict between the shareholders, the current ownership structure of the Debtor puts the future of the hotel operation in peril. While the hotel itself is successful, the continued litigation has the potential to create needless chaos and confusion for operation of the hotel. If the shareholders are not able to effectively resolve their dispute, the risk of dissolution of the company entirely is the only alternative for shareholders in an unresolved conflict where no one party has ultimate decision-making authority. Dissolution at some future point may or may not provide a means by which all creditors will be paid in full.

43.     The proposed purchase price of the hotel operation is substantial in light of the risks involved in purchasing a hotel operation without the real estate which put the prevailing bidder at risk for lease termination at a future date. Thus a substantial      portion of the value of the hotel operation is in the ownership and/or control of the real estate for which the Debtor has no direct control over which will in all circumstances have a depressive effect      on the value of the hotel operation.

44.     Setting aside the risk the buyer is willing to take on in purchasing a hotel operation without the real estate, sale inside of bankruptcy allows the business the best opportunity to continue to operate well into the future, will provide cash for payment in full of all non-insider unsecured creditors and will at the same time allow

either one or both of the shareholders to receive a meaningful distribution for their equity interest.

45.     The creditors' collection of payment in full of amounts due within only a few short months, if not weeks after a closing on the sale combined with the ability for the shareholders to resolve their dispute with an opportunity to receive an equity distribution is a just and equitable outcome.

46.     In light of the ownership issues attending to the real estate, the financial risk to unsecured creditors without a sale remains far greater as the ability to satisfy creditor's allowed claims and equity interests will be extended indefinitely until the shareholders resolve their dispute in some other way other than a sale of the hotel.

47.     In the trustee's business judgment, the sale is in the best interest of all creditors and parties in interest as well as the best interest of the employees and business's continued success without being mired by a shareholder dispute that risks creating an indefinite and uncertain future for creditors and all parties in interest.

48.     In the Trustee's opinion, a plan of reorganization that does not include a proper management agreement in the form of corporate bylaws, a management agreement to allow Shammami to continue to successfully manage the hotel without interference and the Debtor, its creditors and the employees of the hotel will be better served by an operation that is free from protracted litigation and dispute that is bound

to continue in the event that this case is dismissed without a confirmed plan or sale of assets.

49.     The Trustee has presented the opportunity for offers and bidding to both of the Debtor's shareholders. There remains an opportunity for any interested buyers to participate in a competitive bidding process which ensures the recovery of the maximum value for the benefit of all creditors and parties in interest.

50.     The terms offered by Buyer are the most favorable that the Trustee has received since the beginning of this Chapter 11 case and do not require non-parties' consent or involvement in the asset transfer.

51.     The sale will generate substantial income to the estate and the Debtor will be able to satisfy all of its obligations in full to non-insider creditors. In addition, the Debtor's estate will be relieved of all expenses arising from the continued operation of the hotel facility subject to the dispute between Debtor's shareholders. The sale of the Business Property to Buyer is a key component of what must be accomplished before the Debtor may seek confirmation of a plan of liquidation, a process that could begin in earnest very shortly after completion of the sale.

## VIII.  TERMS OF THE SALE

52. In accordance with the Purchase Agreement, dated March 18, 2022, between the Trustee and the Buyer (a copy of which is attached as Exhibit A), the Buyer has

agreed subject to bankruptcy court approval to purchase, and the Debtor has agreed

to sell, the Business Property under the following terms and conditions:

a. **Purchase Price.** The Business Property (including all tangible and intangible personal property located at the Debtor's facility, and all licenses, designated contracts and related rights necessary or appropriate for operation of the hotel facility) is to be sold to Buyer for $542,627.34 which shall be paid at closing and may be paid from the Purchased Assets and the $341,332.31 claim of Choice Hotels which shall be assumed   – a total of $883,959.65      (the "Purchase Price"). The offer is subject to higher and better offers solicited at a public auction conducted in this Court as described below and as further outlined in the Trustee's Motion to Approve Bidding Procedures;

b. **Closing—Conditions.** The Purchase Price is payable in cash immediately available at the date and time that all conditions precedent to the sale of the Business Property set forth in the Purchase Agreement are satisfied, excused, or otherwise discharged, and the Debtor presents for transfer to Buyer or the highest bidder any title to the Business Property and all related assets sold in accordance with the Purchase Agreement (the **"Closing"**);

c. **Closing—Date.** The Closing is to occur no later than May 5f, 2022 unless extended by the Trustee.

d. **Executory Contracts and Unexpired Leases.** The Debtor, as a condition precedent to the Closing, is to assume and assign to the Buyer or the highest bidder all executory contracts including but not limited to the real estate lease with St. Marie Hospitality and the Choice Hotels franchise agreement so designated for assumption by the Buyer pursuant to the Purchase Agreement which may be waived by the Buyer as a condition precedent;

e. **Statutory Protections.** The parties to the Purchase Agreement are entitled to the protections contained in Bankruptcy Code section 363(m), including that of a good faith purchaser for value;

f. **Operation of Business Property.** The Buyer or the highest bidder will assume operation at Closing.;

g. **Higher and Better Offers.** The Purchase Agreement is subject to higher and better offers, such offers to conform with all requirements set forth in the Motion and Order Approving Sale Procedures filed concurrent with this sale motion;

h. **Approvals.** The sale also is subject to franchisor Choice Hotels, Inc.'s approval and acceptance of the successful bidder as a franchisee.

.                    **IV. SALE FREE AND CLEAR OF LIENS**

53. The Purchase Agreement provides that the Business Property be sold to the Buyer free and clear of all liens, claims, interests and encumbrances against that

property, including but not limited to any unrecorded mechanic's and materialmen's liens or utility charges. Such a sale is appropriate under the circumstances present in this case and the explicit provisions of Bankruptcy Code §363(f), which provides that property may be sold under §363(b) "free and clear of any interest in such property…if…(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

WHEREFORE the Debtor respectfully requests that the Court enter the order attached to this motion: approving the sale of the Business Property to the Buyer in accordance with the provisions of the Purchase Agreement, subject to higher and better offers as solicited by a public auction conducted in accordance with the Guidelines set forth above; and providing that the Business Property be sold free and clear of all liens, claims, encumbrances and interests in accordance with Bankruptcy Code §363(f); and finding that the Buyer is a good faith purchaser entitled to the good faith purchaser protections of Section 363 (m) and (d) granting any additional relief the Court deems appropriate.

SUBCHAPTER V. TRUSTEE

By: /s/ Kimberly Ross Clayson
Kimberly Ross Clayson (P69804)
JAFFE, RAITT, HEUER & WEISS, P.C.
27777 Franklin Road – Suite 2500
Southfield, MI 48034
P: 248.351.3000
kclayson@jaffelaw.com

Dated: March 18, 2022

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                  Chapter 11
Soo Hotels, Inc.                        Case No. 21-45708-mlo

                                        Hon. Maria L. Oxholm


          Debtor.
_____/


**ORDER APPROVING SALE OF PROPERTY OF THE ESTATE AND TO
ASSUME AND ASSIGN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES OUTSIDE OF THE ORDINARY COURSE OF BUSINESS UNDER
11 U.S.C. §363 FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES WITH LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES TO TRANSFER
TO SALE PROCEEDS AND FOR RELATED RELIEF**


THIS MATTER having come before the court upon Trustee in Possession's

Motion (the "Debtor") to Approve Sale of Property of the Estate And To Assume

And Assign Executory Contracts And Unexpired Leases Outside of the Ordinary

Course of Business Under 11 U.S.C. §363 Free and Clear of Liens, Claims, Interests

and Encumbrances with Liens, Claims, Interests and Encumbrances to Transfer to

Sale Proceeds (the "Sale Motion"), notice of the Sale Motion having been served on

all creditors and parties in interest and no unresolved objections having been timely

filed or served as stated in Debtor's Certification of Non-Response.

THE COURT HEREBY FINDS DETERMINES AND CONCLUDES THAT:

1.1    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052;

1.2    The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. sections 157 (b) (1) and 1334 (b) and to grant the relief requested in the Motion Venue is proper under 28 U.S.C. sections 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. Section 157 (b) (2);

1.3    As evidenced by the certificates of service, notice of the Motion was proper and provided to all necessary parties.

1.4    Emergent circumstances and sound business reasons exist for the Sale of the Business Property and Assumption and Assignment of the Executory Contracts and Unexpired Leases (as described in the Motion) pursuant to the Agreement. Entry into the Agreement and consummation of the sale constitute the exercise by the Debtor of sound business judgment and such acts are in the best interest of the Debtor, the estate and all parties in interest. The court finds that the Debtor has articulated good and sufficient business reasons justifying the Sale of the Business Property to the Buyer. Such business reasons include, but are not limited to, the following: (i) the Agreement constitutes the highest or otherwise best offer

for the Purchased Assets; (ii) the Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets and avoid decline and devaluation of the Debtor's business; (iii) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; and (iv) the Agreement and the closing thereon will provide a greater recovery for the Debtor's creditors than would be provided by any other presently available restructuring alternative.

1.5    The Agreement was negotiated undertaken by the Debtor and Buyer at arms' length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m). Provided additional bids are received, an Auction will be conducted in accordance with the Bid Procedures Order, as a result of the foregoing, the Debtor and Buyer are entitled to the protections of Bankruptcy Code section 363(m). Moreover, neither the Debtor nor Buyer engaged in any conduct that would cause or permit the Agreement to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n).

1.6    The total consideration provided by Buyer for the Purchased Assets is the highest or otherwise best offer received by the Trustee,

1.7    Buyer would not have entered into the Agreement and would not consummate the Sale, if the sale of the Purchased Assets to Buyer was not free and clear of all Liens, Claims, Interests and Encumbrances, or if Buyer would, or in the

future could, be liable for any of such Liens, Claims, Interests and Encumbrances. A sale of the Business Property other than one free and clear of Liens, Claims, Interests and Encumbrances would adversely impact the Debtor's estate, and would yield substantially less value for the Debtor's estate, with less certainty than the Sale. Therefore, the Sale contemplated by the Agreement is in the best interests of the Debtor, its estate and creditors, and all other parties in interest.

1.8 The Trustee in Possession may sell the Business Property free and clear of all Liens, Claims, Interests and Encumbrances (other than the designated Assumed Liabilities), because, with respect to each creditor asserting a Lien, Claim, Interest or Encumbrance, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Liens, Claims, Interests and Encumbrances who did not object or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented to the Sale Motion and Sale pursuant to Bankruptcy Code section 363(f)(2). Those holders of Liens, Claims, Interests and Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having (i) their Liens, Claims, Interests and Encumbrances attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they assert a Lien, Claim or Interest with the same rights and priorities that they held against the Business Property or (ii) their Liens, Claims, Interests or encumbrances remain unchanged by

the Sale with the same rights and priorities that they held against the Business Property.

1.9     Those of the Debtor's employees who are to be employed by Buyer pursuant to the Agreement, are being hired under new employment contracts or other arrangements to be entered into or to become effective at or after the time of the Closing. The Transactions do not amount to a consolidation, merger or de facto merger of Buyer and the Debtor and/or the Debtor's estates, and Buyer does not constitute a successor to the Debtor or the Debtor's estates for purposes of successor liability.

1.10    The transfer the Business Property will be a legal, valid, and effective transfer of the Business Property, and will vest Buyer with all right, title, and interest of the Debtor in the Business Property free and clear of any and all liens, claims, interests, and encumbrances (including, without limitation, Liens, Claims, Interests and Encumbrances as defined in the Agreement) of any type whatsoever (whether known or unknown, secured or unsecured or in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non- material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 case, and whether imposed by agreement,

understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Buyer's interest the Business Property, or any similar rights, (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the business prior to the Closing Date, including the transfer of the Business Property to the Buyer, and (iii) that relate to or arise under doctrines of successor liability (all such liens, claims, interests, and encumbrances listed herein, the "Liens, Claims, Interests and Encumbrances"), other than the Designated Assumed Liabilities.

1.11   Time is of the essence in consummating the Sale.  Accordingly, to maximize the value of the Debtors' assets, it is essential that the sale of the Business Property occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

1.12   Approval of the Agreement, and consummation of the Sale of the Business Property and Assumption and Assignment of the Executory Contracts and Unexpired Leases at this time is     in the best interests of the Debtors, their creditors, their estates, and all parties in interest.

Based upon all of the foregoing, and after due deliberation,

IT IS HEREBY ORDERED THAT:

2.1     The relief requested in the Motion is Granted.

2.2     The Trustee is authorized and directed to sell the Business Property defined in the Sale Motion to the Buyer or the highest bidder (referred to as "Buyer" or "Purchaser") at public auction according to the following terms:

a.     **Purchase Price.** The Business Property (including all tangible and intangible personal property located at the Debtor's facility or in which Debtor has an interest, and all licenses, designated contracts and related rights necessary or appropriate for operation of the hotel facility) is to be sold to Buyer for $542,627.34 which shall be paid at closing and may be paid from the Purchased Assets less amounts due for allowed administrative expenses plus the assumed liability of the $341,332.31 claim of Choice Hotels – a total of $883,959.65 (the "Purchase Price"). The offer is subject to higher and better offers solicited at a public auction conducted in this Court as set forth in the Order Approving Sales Procedure. The distribution to Salwan Atto for his equity interest if Dominic Shammami is the successful bidder is subject to Salwan Atto's surrender of his stock which shall have the effect of releasing all claims that he or any related persons have, whether known or unknown.  If Dominic Shammami is the successful bidder, his disclaimer of any proceeds shall be in full satisfaction of the estate's claims against him.

b. **Closing—Conditions.** The Purchase Price shall be payable in cash immediately available at the date and time that all conditions precedent to the sale of the Business Property set forth in the Motion and Purchase Agreement are satisfied, excused, or otherwise discharged, and the Trustee presents for transfer to the Buyer or the highest bidder any title to the Business Property and all related assets sold in accordance with the Purchase Agreement (the "Closing");

c. **Closing—Date.** The Closing is to occur no later than May 5, 2022 unless extended by the Trustee;

d. **Executory Contracts.** The Trustee, as a condition precedent to the Closing, shall assume and assign to the Buyer or the highest bidder, executory contracts so designated by the Buyer including but not limited to the Choice Hotels franchise agreement and the real estate lease with Saint Marie Hospitality, Inc., unless waived by the Buyer, and the successful purchaser is entitled to the protections contained in Bankruptcy Code section 365(k);

e. **Statutory Protections.** The parties to the Purchase Agreement shall be entitled to the protections contained in Bankruptcy Code section 363(m), including that of a good faith purchaser for value;

f. **Operation of Business Property.** The Buyer or the highest bidder shall immediately assume operation of the Business Property after the Closing.

g. **Higher and Better Offers.** The Purchase Agreement is subject to higher and better offers, such offers to conform with the set forth in the Motion to Approve Sale Procedure filed concurrent with this sale motion;

h. **Break-Up Fee and Overbid Procedure.** There shall be no Break-Up fee. Overbids shall be in an amount of no less than $10,000. Any bidders shall provide proof of funds in an amount necessary to close no later than 3 business days prior to the public auction contemplated by the Motion and this Order.

i. **Assignment and Waiver.** The Trustee is authorized to make or execute such assignments that are reasonably necessary to evidence the conveyance of the Business Property to Buyer.

2.3     The sale of Business Property is free and clear of all liens, claims, interests and encumbrances with such liens, claims, interests and encumbrances shall transfer to the sale proceeds other than as provided in the Motion and this Order.

2.4     All objections and responses concerning the Motion are resolved and to the extent any such objection or response was not otherwise withdrawn, waived, or settled, it is, and all reservations of rights or relief requested therein, overruled and denied.

2.5     The Agreement, and the Sale of the Business Property to the Buyer, are hereby approved and authorized in all respects.

2.6    The consideration provided by Buyer for the Business Property shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision, of the Bankruptcy Code or nonbankruptcy law.

2.7    The Transactions are undertaken by the Buyer in good faith, Buyer is a purchaser in good faith as that term is used in Bankruptcy Code section 363(m), and Buyer is entitled to all of the protections afforded by Bankruptcy Code section 363(m); accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale of the Business Property to Buyer (including the assumption, assignment, and sale of any of the Assumed Executory Contracts and Assumed Leases, if any), unless such authorization is duly stayed pending such appeal.

2.8    The Trustee is authorized and directed to take any and all actions necessary or appropriate to:

a.    consummate the Sale (including, without limitation, to convey to Buyer any and all of the Business Property) and the Closing of the Sale in accordance with the Motion, the Agreement and this Order; and

b.    perform, consummate, implement and close fully the Agreement together with all additional instruments and documents that may be reasonably

necessary or desirable to implement the Agreement. The parties shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to their obligations to do so as set forth in the Agreement have been met, satisfied or waived.

2.9   Upon the Closing, Buyer shall assume and agree to pay, perform and otherwise discharge, the designated Assumed Liabilities in accordance with, and as limited by, the Agreement.

2.10   Upon the Closing and prior to remittance of cash proceeds, the Trustee shall retain cash in what, in her sound business judgment, is sufficient to satisfy all allowed non-insider unsecured creditor claims, allowed administrative expense claims subject to this court's approval of all such administrative expenses requested by proper application and granted by order of this court. After all administrative expense claims are fully adjudicated, the Trustee shall remit any unused balance of retained cash to Buyer. To the extent that the Trustee does not have sufficient cash on hand to satisfy all allowed administrative expense and non-insider unsecured claims, the Buyer shall at closing remit cash in an additional amount as determined in a pre-closing settlement statement to ensure all claims are paid in full.

2.11   The Trustee shall disburse to Buyer any excess cash resulting from any denial of claims or if claims are adjudicated as allowed, the Trustee shall disburse payment to allowed claims.

2.12   All parties in interest shall have 7 days from the date of entry of this Order to file any objections to claims.

2.13   Purchased Assets shall not include any property owned by third parties unless such third parties have provided written consent to such sale of property.

2.14   Buyer is hereby authorized in connection with the consummation of the Sale to allocate the Business Property in accordance with the Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by Buyer to effectuate any of the foregoing.

2.15   Upon the Closing, and except as otherwise expressly provided in the Agreement, Buyer shall not be liable for any Liens, Claims, Interests, or Encumbrances against, and liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates be deemed for all purposes to have consummated, the sale, transfer and assignment of the Business Property to Buyer free and clear of any and all Liens, Claims, Interests and Encumbrances), and (b) except as otherwise expressly provided in the Agreement, all such Liens, Claims, Interests and Encumbrances other than Permitted Exceptions and Assumed Liabilities shall be and hereby are released, terminated and discharged as to the Buyer and the Business Property.

2.16   Buyer shall not be deemed a successor of or to the Debtor or the Debtors' estates with respect to any Liens, Claims, Interests and Encumbrances

against the Debtor or the Business Property, and Buyer shall not be liable in any way for any such Liens, Claims, Interests and Encumbrances and Assumed Liabilities). Upon the Closing of the Sale, all persons including all creditors, employees and equity holders of the Debtors are permanently and forever barred, restrained and enjoined from (a) asserting any claims or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against Buyer on account of any of the Liens, Claims, Interests and Encumbrances other than Assumed Liabilities and Permitted Exceptions or (b) asserting any claims or enforcing remedies under any theory of successor liability, *de facto* merger, or substantial continuity.

2.17   Subject to the occurrence of the Closing Date, this Order (a) is and shall be effective as a determination that,  upon Closing, all Liens, Claims, Interests and Encumbrances existing as to the Business Property conveyed to Buyer have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or

release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Business Property conveyed to Buyer. All such entities described above in this Paragraph 14 are authorized and specifically directed to strike all recorded Liens, Claims, Interests and Encumbrances against the Business Property from their records, official and otherwise and including without limitation those Liens, Claims, Interests and Encumbrances. If any person or entity, which has filed statements or other documents or agreements evidencing Liens, Claims, Interests and Encumbrances on the Business Property shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens, Claims, Interests and Encumbrances, and any other documents necessary for the purpose of documenting the release of all Liens, Claims, Interests and Encumbrances which the person or entity has or may assert with respect to the Business Property, the Trustee and Buyer are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Business Property.

2.18   Any and all Business Property in the possession or control of any person or entity, including, without limitation, any former vendor, supplier or employee of the Debtor shall be transferred to Buyer free and clear of Liens, Claims, Interests and Encumbrances and shall be delivered at the time of Closing to Buyer.

2.19   This Order and the Agreement shall be binding in all respects upon all creditors and equity holders of any of the Debtor, all successors and assigns of the Debtor and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtor's bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Agreement shall not be subject to rejection or avoidance under any circumstances.

2.20   The Agreement and any related agreements, documents, or other instruments may be modified amended, or supplemented by the parties thereto, in a writing signed by the parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

2.21   To the extent prohibited by the Bankruptcy Code, no governmental unit may revoke or suspend any Permit or license relating to the operation of the Business Property sold, transferred, or conveyed to Buyer, on account of the filing or pendency of the Debtor's chapter 11 case or the consummation of the Sale.

2.22   Any amounts that become payable by the Debtor to Buyer pursuant to the Agreement or any of the documents delivered by the Debtor pursuant to or in connection with the Agreement shall

(a) constitute administrative expenses of the Debtor's estate and

(b) be paid by the Debtor in the time and manner as provided in
the Agreement without further order of this Court.

2.23   Nothing contained in any order entered in the Debtor's bankruptcy case subsequent to entry of this Order, nor in any chapter 11 plan confirmed in these chapter 11 cases, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

2.24   This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h), 6006(d) and any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

2.25   The provisions of this Order are non-severable and mutually dependent.

2.26   The failure specifically to include or make reference to any particular provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement is authorized and approved in its entirety unless expressly modified herein.

2.27   The Court retains jurisdiction, even after the closing of these chapter 11 cases, to: (1) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Agreement, all amendments thereto and any waivers and consents thereunder; (2) protect Buyer, or any of the Business Property, from and against any of the Liens, Claims, Interests and Encumbrances ;(3) compel delivery of all Business Property

to Buyer; and (4) resolve any disputes arising under or related to the Agreement, the Sale or Buyer's peaceful use and enjoyment of the Business Property.

2.28   Nothing in this order approving sale shall be construed to alter the statutory authority of the State of Michigan, Unemployment Insurance Agency to determine successor tax liability (including unemployment experience and tax rate) under the Michigan Employment Security Act. (MES Act) This Sales Order, including its terms, provisions, exhibits and any purchase agreement shall not waive or discharge any unemployment tax experience and tax rate liability or obligations that the Debtor or any purchaser may have to the State of Michigan under the MES Act.

2.29   To the extent that there is any inconsistency between this order and the Asset Purchase Agreement, this Order shall govern.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE:                                          Chapter 11
Soo Hotels, Inc.                                Case No. 21-45708-mlo

                                                Hon. Maria L. Oxholm

                           Debtor.
_____/

## NOTICE OF MOTION TO APPROVE SALE OF PROPERTY OF THE ESTATE AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OUTSIDE OF THE ORDINARY COURSE OF BUSINESS UNDER 11 U.S.C. §363 FREE AND CLEAR OF LIENS AND INTERESTS WITH LIENS AND INTERESTS TO TRANSFER TO <u>SALE PROCEEDS AND FOR RELATED RELIEF</u>

The Trustee in Possession for Debtor Soo Hotels, Inc. filed its Motion to Approve Sale of Property of the Estate and Assumption and Assignment of Executory Contracts and Unexpired Leases Outside of the Ordinary Course of Business Under 11 U.S.C. §363 Free and Clear of Liens and Interests with Liens and Interests to Transfer to Sale Proceeds and for Related Relief.

      **Your rights may be affected.**  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)

      If you do not want the court to relief sought in the motion, or if you want the court to consider your views on the motion, within twenty-one (21) days, you or your attorney must:

1.      File with the court a written response or an answer, explaining your position at:
      United States Bankruptcy Court

211 W. Fort Street, 2100
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above. All attorneys are required to file pleadings electronically.

You must also send a copy to:

Kimberly Ross Clayson
Subchapter V Trustee
27777 Franklin Rd. Suite 2500
Southfield, MI 48034

2.      If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

SUBCHAPTER V. TRUSTEE

By: /s/ Kimberly Ross Clayson
Kimberly Ross Clayson (P69804)
JAFFE, RAITT, HEUER & WEISS, P.C.
27777 Franklin Road – Suite 2500
Southfield, MI 48034
P: 248.351.3000
kclayson@jaffelaw.com

Dated: March 18, 2022